**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | NO. 3:25-CR-172 (KAD) |
| | : | |
| v. | : | |
| | : | |
| RICK MARRO | : | July 17, 2026 |

**ORDER DENYING [66] MOTION TO DISMISS INDICTMENT AND [69] AMENDED MOTION TO DISMISS INDICTMENT**

Kari A. Dooley, U.S.D.J.

On October 15, 2025, a grand jury returned a 3-count Indictment against Defendant Rick Marro charging him with production of child pornography, 18 U.S.C. §§ 2251(a) and (e), distribution and receipt of child pornography, 18 U.S.C. §§ 2252A(a)(2)(B) and (b)(l), and possession of child pornography, 18 U.S.C. §§ 2252A(a)(5)(B) and (b)(2). *See* Indictment, ECF No. 43. Now representing himself *pro se*, Defendant has moved to dismiss the Indictment as unconstitutional under the First Amendment to the United States Constitution.[1] The Government opposes the motion.[2] Defendant also filed a reply that far exceeds the page number constraints for a reply brief and addresses certain arguments "in greater depth than in the initial [M]otion to [D]ismiss."[3] *See* D. Conn. L. Civ. R. 7(d); Reply, ECF No. 71 at 7. Given Defendant's *pro se*

---

[1] On May 11, 2026, Defendant filed his Motion to Dismiss. *See* Mot. to Dismiss, ECF No. 66. He filed an Amended Motion to Dismiss on June 1, 2026. *See* Am. Mot. to Dismiss, ECF No. 69. The Amended Motion to Dismiss makes stylistic and formatting changes, but is substantively the same as the original motion. Although the Court has read and considered both motions, it considers the Amended Motion to Dismiss as the operative motion. Although the Amended Motion to Dismiss seeks oral argument, the Court denies the request as unnecessary to the adjudication of the motion.

[2] The Government filed an Opposition to the original Motion to Dismiss, *see* Opp. ECF No. 68, and a second Opposition to both the original and the Amended Motion to Dismiss, *see* ECF No. 70. Because the subsequent opposition addresses both motions, the Court considers it the operative opposition.

[3] On June 25, 2026, the Court received a corrected reply, submitted by Defendant's standby counsel. *See* Reply, ECF No. 71. On June 26, 2026, the Court received the original reply. *See* Reply, ECF No. 72. The Court considers the corrected reply at ECF No. 71 as the operative reply despite exceeding the page number constraints imposed by the Local Rules.

status, the Court nonetheless accepts Defendant's reply brief and considers the arguments set forth

therein.  For the reasons that follow, the motion is **DENIED**.

**Allegations**

For purposes of adjudicating this motion, the Court sets forth not only the allegations

contained in the Complaint and the Indictment, but also the broader narrative set forth by the

Defendant in his Motion to Dismiss and Reply thereto.

The charges arise from the relationship between Defendant and a then-16-year-old boy

referred to in the Complaint as "MV."[4]  Compl., ECF No. 1-1 at ¶ 7 (SEALED).[5]  Although MV

was under the age of 18, Defendant asserts that because he was 16, he was above the age of consent

in the state of Connecticut.  *See* Am. Mot. to Dismiss, ECF No. 69 at 2.[6]  From approximately the

period of April 19, 2023 to May 4, 2023, Defendant received and distributed Snapchat videos

containing visual depictions of MV engaging in sexually explicit conduct.  Indictment, ECF No. 43

at 2; Compl., ECF No. 1-1 at ¶ 26 (SEALED).  The two had met via social media, through which

they frequently communicated and "shared sexually explicit visual depictions of themselves, with

each other, privately."  Am. Mot. to Dismiss, ECF No. 69 at 2; *see also* Compl., ECF No. 1-1 at

¶¶ 7–8 (SEALED).  They had met on at least two occasions to engage in allegedly consensual

sexual activity.  *See* Am. Mot. to Dismiss, ECF No. 69 at 2; *see also* Compl., ECF No. 1-1 at ¶ 12

---

[4] The Indictment identifies only "a minor, whose identity is known to the Grand Jury."  Indictment, ECF No. 43 at 1.

[5] In rendering this decision, the Court necessarily cites to sealed documents.  Because the cited document is significant to the Court's ultimate ruling on this dispositive motion, to the extent otherwise sealed information is included in the decision, it is *sua sponte* unsealed.

[6] Indeed, the age of consent to engage in sexual intercourse in the state of Connecticut is sixteen.  *See* Conn. Gen. Stat. § 53a–71(a)(1).  However, Connecticut law is not uniform in defining the term "minor."  Pursuant to Conn. Gen. Stat. §53a-196j, which criminalizes "harmful communication with a minor[,]" "minor" means any person under eighteen years of age.  *Id*.  The same statute makes it a crime for any person 25 years of age or older to "knowingly persuade, induce, entice or coerce a minor to (1) Share a photographic or other recorded image of the minor for the purpose of providing sexual gratification to the person who requests the image be shared."  Yet other statutes define a minor as either under the age of sixteen or seventeen, depending upon the context and nature of the prohibited conduct.  *See* Conn. Gen. Stat. § 53a-193(2).

(SEALED). Defendant was interested in "[b]reath play and asphyxiation" and he had strangled MV causing him to pass out for a minute or two. Compl., ECF No. 1-1 at ¶ 12 (SEALED). There is a video recording of the asphyxiation as well as other sexual activity. *Id*. (SEALED); *see also* Am. Mot. to Dismiss, ECF No. 69 at 2. Defendant had taken several photographs and videos of their sexual encounters. *See* Am. Mot. to Dismiss, ECF No. 69 at 2; Compl., ECF No. 1-1 at ¶ 26 (SEALED).

Defendant also asked MV to send photos of himself to others in exchange for child pornography, which MV would store and share with Defendant. Compl., ECF No. 1-1 at ¶ 12(g) (SEALED). Defendant watched child pornography with MV, including depictions of infants and young children. *Id*. (SEALED). A search of Defendant's electronic devices pursuant to a search warrant revealed several sexually explicit videos depicting MV that Defendant had shared with MV via Snapchat and that MV had shared with Defendant, which Defendant considered "memorializations of their private legal [sexual] conduct. Am. Mot. to Dismiss, ECF No. 69 at 2 (alteration in original); Compl., ECF No. 1-1 at ¶¶ 21–22, 26 (SEALED).

**Discussion**

Defendant seeks to dismiss the Indictment. He argues broadly that Chapter 110 of Title 18 of the criminal code, which includes the statutes under which he has been Indicted, is overbroad in violation of the First Amendment insofar as it defines a minor as an individual under the age of 18. 18 U.S.C. § 2256. The argument goes that because the age of consent under Connecticut law is 16, an individual who is 16 or 17 has a First Amendment right to "memorialize their own coming of age" through the consensual recording of his consensual sexual conduct. Am. Mot. to Dismiss, ECF No. 69 at 8. Thus, Defendant posits, Chapter 110, which relies upon the definition of a minor as contained in § 2256, impermissibly restricts the protected speech of these 16 and 17-year-olds.

The First Amendment provides "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or *abridging the freedom of speech*, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. Const. amend. 1 (emphasis added).

The freedoms afforded by the First Amendment have long been regarded not only "as supremely precious in our society" but also "delicate and vulnerable." *N.A.A.C.P. v. Button*, 371 U.S. 415, 433 (1963). As a result, it is now well established that "constitutional violations may arise from the deterrent, or 'chilling,' effect of governmental regulations that fall short of a direct prohibition against the exercise of First Amendment rights." *Laird v. Tatum*, 408 U.S. 1, 11 (1972) (collecting cases); *see also Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 689 (2d Cir. 2013). This rule comes from the Supreme Court's recognition that "[t]he threat of sanctions may deter [the] exercise [of First Amendment rights] almost as potently as the actual application of sanctions." *Button*, 371 U.S. at 433 (citations omitted).

"A party that challenges a statute as overbroad claims that the statute would violate the First Amendment rights of hypothetical third parties if applied to them." *United States v. Smith*, 945 F.3d 729, 736 (2d Cir. 2019) (cleaned up). "Under the overbreadth doctrine, 'the prudential limitations against third party standing are relaxed, and the litigant may assert the rights of individuals whose interests might be affected by the statute but who are not before the court.'" *Id.* (quoting *Lerman v. Bd. of Elecs. in City of New York*, 232 F.3d 135, 144 (2d Cir. 2000)). "[T]he overbreadth doctrine instructs a court to hold a statute facially unconstitutional even though it has lawful applications, and even at the behest of someone to whom the statute can be lawfully applied." *United States v. Hansen*, 599 U.S. 762, 769 (2023).

In *United States v. Williams*, 553 U.S. 285 (2008), the Supreme Court set forth a two-part analysis when applying the overbreadth doctrine. The Court must first "construe the challenged statute; it is impossible to determine whether a statute reaches too far without first knowing what the statute covers." *Id.* at 293. Next, the Court must determine whether the statute "criminalizes a substantial amount of protected expressive activity." *Id.* at 297. The protected speech must be substantially restricted "relative to its plainly legitimate sweep." *Hansen*, 599 U.S. at 770 (cleaned up). "Because it destroys some good along with the bad, invalidation for overbreadth is strong medicine that is not to be casually employed." *Id.* (cleaned up) (citing *Williams*, 533 U.S. at 293). As the Supreme Court has explained, "there are substantial social costs *created* by the overbreadth doctrine when it blocks application of a law to constitutionally unprotected speech, or especially to constitutionally unprotected conduct." *Virginia v. Hicks*, 539 U.S. 113, 119 (2003) (emphasis in original).

> But the plain import of our cases is, at the very least, that facial overbreadth adjudication is an exception to our traditional rules of practice and that its function, a limited one at the outset, attenuates as the otherwise unprotected behavior that it forbids the State to sanction moves from "pure speech" toward conduct and that conduct — even if expressive — falls within the scope of otherwise valid criminal laws that reflect legitimate state interests in maintaining comprehensive controls over harmful, constitutionally unprotected conduct.

*Broadrick v. Oklahoma*, 413 U.S. 601, 615 (1973).

Indeed, "every civil and criminal remedy imposes some conceivable burden on First Amendment protected activities." *Arcara v. Cloud Books, Inc.*, 478 U.S. 697, 706 (1986).

To invalidate a statute on its face, the Supreme Court has set a high bar. "[A] law's unconstitutional applications must be realistic, not fanciful, and their number must be substantially disproportionate to the statute's lawful sweep." *Hansen*, 599 U.S. at 770 (citing *New York State Club Ass'n, Inc. v. City of New York*, 487 U.S. 1, 14 (1988); *Members of City Council of Los*

*Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 800–801 (1984)).  "In the absence of a lopsided ratio, courts must handle unconstitutional applications as they usually do — case-by-case."  *Id*.  "The overbreadth claimant[,]" in this case — defendant, "bears the burden of demonstrating, 'from the text of [the law] and from actual fact,' that substantial overbreadth exists."  *Hicks*, 539 U.S. at 122 (second alteration in original) (quoting *New York State Club Ass'n, Inc.*, 487 U.S. at 14).

In *Miller v. California*, 413 U.S. 15 (1973), the Supreme Court determined that materials that are obscene do not enjoy First Amendment protection.  *Id*. at 23.  The Court recognized the "inherent dangers of undertaking to regulate any form of expression," *id.*, and so placed limitations on what fell within the permissible scope of a regulation.  The Court limited the scope of the state statute to "works which, taken as a whole, appeal to the prurient interest in sex, which portray sexual conduct in a patently offensive way, and which, taken as a whole, do not have a serious literary, artistic, political, or scientific value."  *Id*. at 24.[7]

In *New York v. Ferber*, 458 U.S. 747 (1982), the Supreme Court was asked to consider whether New York's prohibition on the dissemination of child pornography violated the First Amendment insofar as it did not graft into the statute, the *Miller* obscenity standard.  The New York Court of Appeals determined that without such a limitation, "the statute would . . . prohibit the promotion of materials which are traditionally entitled to constitutional protection from government interference under the First Amendment."  *Id*. at 752 (alteration in original) (quoting

---

[7] The Supreme Court's discussion addressed content-based regulations and each of the subsequent decisions discussed herein also approached these First Amendment issues as content-based restrictions.  *See New York v. Ferber*, 458 U.S. 747, 756 (1982) ("The *Miller* standard, like its predecessors, was an accommodation between the State's interests in protecting the 'sensibilities of unwilling recipients' from exposure to pornographic material and the dangers of censorship inherent in *unabashedly content-based laws*." (emphasis added)).  Defendant, throughout his memorandum, asserts that the statutes at issue are "viewpoint-based" restrictions, *see* Am. Mot. to Dismiss, ECF No. 69 at 1, 5, 7, 11–14.  The Court disagrees and frankly, the genesis and authority for Defendant's assertion is unclear.

*People v. Ferber*, 422 N.E.2d 523, 525 (N.Y. 1981)).  The Supreme Court disagreed and reversed. *Ferber*, 458 U.S. at 774.

The *Ferber* Court first acknowledged without "the need for elaboration" that New York's interest in "'safeguarding the physical and psychological well-being of a minor' is 'compelling.'" *Id*. at 756–57 (citation omitted).  The Court next observed that "[t]he prevention of sexual exploitation and abuse of children constitutes a government objective of surpassing importance." *Id*. at 757.  And finally, the Court observed that "[t]he legislative judgment, as well as the judgment found in the relevant literature, is that the use of children as subjects of pornographic materials is harmful to the physiological, emotional, and mental health of the child."  *Id*. at 758 (footnote omitted).  As such, "[t]hat judgment . . . easily passes muster under the First Amendment." *Id*.

As it did in *Miller*, the Supreme Court recognized that there are limits as to the types of imagery that are unprotected by the First Amendment.  And "[a]s with all legislation in this sensitive area, the conduct to be prohibited must be adequately defined by the applicable state law, as written or authoritatively construed." *Id*. at 764.  With respect to the New York statute at issue, the Court held that the state offense must "be limited to works that *visually* depict sexual conduct by children *below a specified age*." *Id*. (first emphasis in original; second emphasis added).[8]  The Supreme Court explicitly recognized that although New York defined child pornography as including minors under the age of 16, many states define a child as a person under the age of 18; some define a child by appearance as well as age; and at least one state had two separate age classifications, under 16 and under 18, with the punishment varying depending upon the child's age. *Id*. at 764 n.17; *see also supra* note 6.

---

[8] The Court then examined the language of the New York statute at issue and determined that it "sufficiently describes a category of material the production and distribution of which is not entitled to First Amendment protection."  *Id*. at 765.

7

Next, in *United States v. X-Citement Video, Inc.*, 513 U.S. 64 (1994), the Supreme Court had occasion to consider whether, when charging violations of Title 18 U.S.C. §§ 2252(a)(1) and (a)(2), the Government was required to prove that the Defendant knew that the materials depicted minors.  Absent such a limitation in the statute, the Ninth Circuit had held that the statutes at issue were overbroad and unconstitutional.  *Id*. at 67.  Not of particular import here, the Court determined that the word "knowingly" as used in the statute modified the phrase "use of a minor" such that the defendant's knowledge as to the age of the participants in the pornography was a required element of the offenses.  *Id*. at 78.  However, the defendant in *X-Citement Video* also argued that § 2256 was unconstitutionally vague and overbroad (as Defendant does here) because, *inter alia*, it defines the age of majority as 18, rather than 16, as was the case in *Ferber*.  *Id*.  The Supreme Court summarily rejected this argument as "insubstantial" for the reasons articulated by the Court of Appeals.  *Id*. at 78–79.  The Court of Appeals, in turn, had rejected this overbreadth argument stating "we would not lightly hold that the Constitution disables our society from protecting those members it has traditionally considered to be entitled to special protections — minors."  *U.S. v. X-Citement Video, Inc.*, 982 F.2d 1285, 1288 (9th Cir. 1992).  Thus, the Court concluded, the defendant had not overcome the presumption against invalidating a statute on its face for overbreadth.  Although Defendant avers that there is a distinction between the private and commercial use of such photography, he presents no controlling authority on the issue.  Reply, ECF No. 71 at 8 (relying on Justice Scalia's dissent in *X-Citement Video*, 513 U.S. at 80–87 (Scalia, J., dissenting)).  And absent same, the Court is reluctant to draw distinctions that arguably (and likely) run afoul of Supreme Court precedent.

Between *Ferber* and *X-Citement Video*, the Supreme Court has likely and at least arguably foreclosed Defendant's argument.  But to the extent there is daylight between those decisions and

Defendant's argument, the Court observes that Courts have generally rejected this argument. *See United States v. Haensgen*, 775 F. App'x 284, 286 (9th Cir. 2019) (relying on *X-Citement Video*, rejecting First Amendment overbreadth challenge to Congress's 1984 amendment to the definition of "minor . . . — increasing the age cut-off from 16 to 18"); *United States v. Bach*, 400 F.3d 622, 629 (8th Cir. 2005) (holding that "the congressional choice to regulate child pornography by defining minor as an individual under eighteen is rationally related to the government's legitimate interest in enforcing child pornography laws").

Defendant's argument premised upon the Connecticut age of consent has similarly been rejected. In *United States v. Adams*, No. 3:21-cr-504, 2023 WL 5530539, at *2 (N.D. Ohio Aug. 28, 2023) the defendant was charged with production of child pornography in violation of 18 U.S.C. § 2251(a). The defendant argued that the charge violated the First Amendment because the images at issue arose from a consensual sexual relationship between two individuals who were over the age of consent under Ohio law. *Id*. at *3. The Court first observed that the Defendant was not charged because he had engaged in sexual conduct with someone under the age of 18, but rather, he was charged *because he took photographs and videos* of himself and the 17-year-old "girlfriend." *Id*. "And the federal government is 'perfectly free both to define minors as those under the age of majority and to determine that, notwithstanding their ability to consent to sexual conduct, minors over the age of sixteen should not be permitted to be the subject of pornography.'" *Id*. (quoting *United States v. Gore*, No. 1:17-cr-455, 2018 WL 454367, at *1 (N.D. Ohio Jan. 17, 2018)) (citing *United States v. Stringer*, 739 F.3d 391, 396 (8th Cir. 2014)).

Similarly, in *United States v. Laursen*, 847 F.3d 1026 (9th Cir. 2017), the defendant was involved in a sexual relationship with a minor that was legal under the laws of the State of Washington. He was charged with certain child pornography offenses arising from photographs

9

he took of the minor. *Id*. at 1029. The defendant challenged the statutes under which he was charged as overbroad. *Id*. at 1033–34. The Court rejected this argument under *Ferber*. *Id*. at 1034 ("In any event, the prohibited conduct engaged in by [defendant] was producing pornographic material involving [the minor], not simply engaging in a sexual relationship with her. And the Supreme Court has made it crystal clear that child pornography is not constitutionally protected." (citing *Ferber*, 458 U.S. at 763)).

In *United States v. Rouse*, 936 F.3d 849 (8th Cir. 2019), the defendant asserted an argument largely indistinguishable from the argument asserted here. The defendant was charged with enticement of a minor to engage in sexually explicit conduct for the purposes of creating a visual depiction thereof and distribution of child pornography involving images of a consenting 16-year-old girl. *Id*. at 850. The sexual conduct was legal under Nebraska law, where the events occurred. *Id*. The defendant challenged his Indictment under the First Amendment. *Id*. He first relied on Supreme Court authority recognizing that "the market for child pornography was 'intrinsically related' to the underlying abuse and was therefore 'an integral part of the production of such materials, an activity illegal throughout the Nation.'" *Id*. at 851 (quoting *United States v. Stevens*, 559 U.S. 460, 471 (2010)). Because the images at issue did not depict any sexual abuse of a minor, the defendant argued that they fell within the scope of protected speech under the First Amendment and outside the scope of *Ferber*. *Id*. The Court rejected this argument finding that the defendant "misunderstands *Ferber* and the basis for the categorical exclusion of child pornography from protection under the First Amendment." *Id*. Relying upon *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 254 (2002), the Court explained that "the creation of the speech is itself the crime of child abuse." *Id*. at 852. Thus, the "underlying abuse" to which the market for child pornography was "intrinsically related," was the unlawful production of the images themselves. *Id*. (quoting

10

*Stevens*, 559 U.S. at 471).  *See also United States v. Broxmeyer*, 699 F.3d 265, 296 (2d Cir. 2012) (Observing that under federal law, a 17-year-old is a minor for purposes of child pornography offenses, and as such, the fact that the minor might be capable of consenting to sexual activity, did not give rise to a factor in mitigation with respect to sentencing for such offenses).

Finally, even assuming Defendant's arguments are not foreclosed by the Supreme Court's decisions in *Ferber* and *X-Citement Video*, the Defendant has not cited to any controlling authority that the definition of a minor under Section 2256 as a person under the age of 18 is unconstitutionally overbroad under the First Amendment.

Moreover, even if Defendant's argument, which is not without some force, was accepted, Defendant has not demonstrated that the arguable impermissible restriction on 16 and 17-year-olds who wish to document their "coming of age" sexual experiences is so substantial as to demonstrate overbreadth under the First Amendment.  *See Ferber*, 458 U.S. at 773 (explaining that a statute "whose legitimate reach dwarfs its arguably impermissible applications" is not overbroad). Defendant identifies the approximate number — 8.3 million — of 16 and 17-year-olds in the United States whose speech *would be* restricted *if* they determined to photograph their sexual experiences, but he offers only conjecture that the statutory restriction has a substantial impact on the preferred practices of this age group.  *See* Reply, ECF No. 71 at 7.  He has provided no evidence that any of these 8.3 million youths wish to engage in the sort of content creation prohibited by the federal statutes at issue.  *See id.*; *see also Hicks*, 539 U.S. at 122 (finding the challenger bears the burden of demonstrating substantial overbreadth).  It bears repeating that "a law's unconstitutional applications must be realistic, *not fanciful*, and their number must be substantially disproportionate to the statute's lawful sweep."  *Hansen*, 599 U.S. at 770 (citing *New York State Club Ass'n, Inc.*, 487 U.S. at 14 (emphasis added).  And the Supreme Court has made it crystal clear that states and

11

Congress have a compelling interest in protecting minors and restricting the creation of child pornography. *See Ferber*, 458 U.S. at 756–57; *Bach*, 400 F.3d at 629; *Broadrick*, 413 U.S. at 615; *Hansen*, 599 U.S. at 770.

**Conclusion**

For all of the foregoing reasons, the Motion to Dismiss, ECF Nos. 66 and 69, is **DENIED**.

**SO ORDERED** at Bridgeport, Connecticut, this 17th day of July 2026.

 */s/ Kari A. Dooley*
KARI A. DOOLEY
UNITED STATES DISTRICT JUDGE